

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

LESLEIGH NORGROVE,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION and EILEEN DIETRICH and
MELISSA SILBERMAN, as aiders and
abettors,

                Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 08-CV-2202 (FB) (MDG)

*Appearances:*
*For the Plaintiff:*
MATTHEW SCOTT PORGES
THOMAS RICOTTA
VINCENT P. WHITE
Leeds Morelli & Brown P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514

*For the Defendants:*
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
By:   MAXWELL D. LEIGHTON
        Assistant Corporation Counsel
100 Church Street, Room 2-170
New York, NY 10007

**BLOCK, Senior District Judge:**

        Lesleigh Norgrove ("Norgrove")—a fifty-six year-old African-American man—claims that age, race and sex discrimination motivated his reassignment from math teacher at Automotive High School ("AHS") in Brooklyn to a temporary reassignment center. In December 2006, Norgrove was advised that pending an investigation into an allegation against him, he was reassigned to the Region Eight Operations Center (the "Reassignment Center"). The New York City Department of Education ("DOE") brought charges against Norgrove in May 2007, which were hand-delivered to him at the

Reassignment Center. Later in May, the DOE sent a letter to Norgrove's old address notifying him of his right to request a hearing, but because the letter was sent to an out-of-date address, Norgrove did not request a hearing. Deeming him to have waived his right to a hearing, the DOE terminated him in August 2007. Notice of his termination was hand-delivered to Norgrove at the Reassignment Center in October 2007.

In February 2008, Norgrove initiated an Article 78 proceeding in New York State Supreme Court, arguing that his termination violated the procedures set forth in New York Education Law § 3020-a. In January 2009, the Honorable Joan A. Madden agreed and granted Norgrove's petition, directing that he be reinstated with back pay. The DOE complied, reinstating Norgrove with full back pay and salary, but placed him back in the Reassignment Center. In April 2009, the DOE served Norgrove with revised charges, and in July 2009 — rather than contest the charges — Norgrove retired.

In March 2008, Norgrove commenced this action in New York State Supreme Court. He sued the DOE, AHS principal Melissa Silberman ("Silberman") and AHS assistant principal Eileen Dietrich ("Dietrich") under the Equal Protection Clause, 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). In addition, Norgrove claimed he was deprived of due process when DOE terminated him in 2007 without giving him notice of their charges. Defendants removed the case to this Court in May 2008, and now move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants their motion.

I

In ruling upon a motion for summary judgment, the Court "must determine (a) whether there is a 'genuine issue as to any material fact,' and (b) whether, in light of the undisputed facts, 'the movant is entitled to judgment as a matter of law.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted). Further, "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2676 (2009).

II

Discrimination claims based on alleged violations of the Equal Protection Clause[1] — where there is no direct evidence of discrimination — are analyzed using the familiar *McDonnell Douglas* burden-shifting framework, *see Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)):

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. If such a reason is provided, plaintiff may no longer rely on the presumption

---

[1] As the Court recently noted, whether the Age Discrimination in Employment Act ("ADEA") preempts age discrimination claims brought under § 1983 remains an open question, but because "the weight of authority in the Second Circuit favors the position that the ADEA does not preempt claims under § 1983 for age discrimination," *See Pappas v. New York City Bd. of Educ.*, No. 07-CV-4312, 2011 WL 128509, at *1 (E.D.N.Y. Jan. 14, 2011), the Court will assume for the purpose of deciding this motion that Norgrove's age discrimination claim is not preempted by the ADEA.

> raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

*Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotations and citations omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish his prima facie case, Norgove must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). The fourth element is dispositive in this case.[2]

---

[2] The defendants argue that Norgrove's allegedly unsatisfactory performance precludes him from satisfying the second element, but the Second Circuit has made it clear that a plaintiff "need only make the minimal showing that [he] possesses the basic skills necessary for the performance of the job." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (citations, internal quotation marks and alteration omitted). That Norgrove taught in the New York public schools since 1978 demonstrates that he was minimally qualified, *see id.* ("In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualifications is, of course, easier to draw . . . because, by hiring the employee, the employer itself has already expressed a belief that [he] is minimally qualified."); any issues about his performance bear only on the post-prima facie aspects of the *McDonnell Douglas* framework. *See id.* ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action.").

Norgrove argues that he has satisfied the fourth element for three reasons:

- The defendants treated him differently from other similarly situated employees; for example, they disciplined him on the basis of uncorroborated student complaints; they disciplined him for smoking on school grounds; and they scrutinized his work to a greater degree.

- The defendants mailed notices of Norgrove's obligation to appear for a medical examination and of his right to contest his termination to an old address, when they knew he had moved.

- Of the seven AHS staff members in the reassignment center with Norgrove, six were men over fifty years old and five were black.

"A plaintiff relying on disparate treatment evidence must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Norgrove has not, however, identified a single comparator to substantiate his disparate treatment allegations. All he submitted was an affidavit with conclusory accusations:

- "[I was] subject[ed] to criticism and/or discipline to which other similarly situated teachers who were outside of my protected classes were not subjected." Norgrove Aff. at ¶ 5.

- "[O]ther teachers were not required to provide their lesson plans on a weekly basis to the Assistant Principal and were not subjected to discipline based on uncorroborated allegations." *Id.*

- "Generally, teachers do not have allegations of verbal abuse substantiated where there are no corroborating witnesses." *Id.* at ¶ 7.

- "Other less senior teachers outside of my protected class had their [class] preference sheets considered and

5

honored." *Id.* at ¶ 10.

- "Other less senior teachers outside of my protected class were not similarly forced to teach in similar settings [not adequate for teaching]." *Id.* at ¶ 11.

- "Defendants subjected me to a higher frequency of observations, including unannounced observations, than they did other similarly situated employees outside of my protected class." *Id.* at ¶ 13.

- "[T]o my knowledge, many other teachers will smoke on school grounds during the school year and were not similarly disciplined." *Id.* at ¶ 14.

Thus, defendants correctly argue that Norgrove's conclusory allegation that he was treated differently is insufficient to defeat summary judgment. *See Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) (holding that "[c]onclusory allegations of discrimination, absent any concrete particulars," are insufficient to defeat summary judgment).

Moreover, Norgrove has not explained why the notices sent to his old address give rise to an inference of discriminatory intent, instead of mere negligent record-keeping.

Finally, with regard to Norgrove's argument that an inference of discrimination can be drawn from the demographics of the other AHS staff members in the reassignment room at the time Norgove arrived, "[s]tatistics alone are insufficient in a disparate-treatment claim because an individual plaintiff must prove that he or she *in particular* has been discriminated against." *Baron v. New York City Dep't of Educ.*, No. 06-CV-2816, 2009 WL 1938975, at *6 (E.D.N.Y. July 7, 2009); *see also Martin v. Citibank, N.A.*,

6

762 F.2d 212, 218 (2d Cir. 1985) (finding no inference of discrimination where six of seven bank employees singled out for a polygraph test were minorities). Thus, Norgrove's proffer of statistical evidence is insufficient without additional evidence of discriminatory intent to prevent summary judgment.

### III

Norgrove alleges that his constitutional rights were violated by DOE and the individual defendants acting in their official capacities. "[W]hen the defendant sued for discrimination under . . . § 1983 is a municipality—or an individual sued in his official capacity—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (internal citation omitted) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

> To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. A policy, custom, or practice may also be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.

*Patterson*, 375 F.3d at 226 (internal citations and quotations omitted).

In support of his *Monell* claim, Norgove states the various methods of showing a municipal policy or custom, then asserts, without providing evidence other than

7

the demographics of the reassignment room at the time he arrived, that he has satisfied each method. The defendants correctly argue in response that Norgrove has not established a DOE custom or policy of sending older black men to reassignment centers.

IV

Norgrove argues that he was denied due process in violation of the Fourteenth Amendment when, after prevailing in the Article 78 proceeding, the defendants reinstated and awarded him back pay but left him in the reassignment center instead of returning him to the classroom. Defendants argue that Norgrove's due process claim "mirrors the claim made in his Article 78 proceeding," and is therefore moot. *See* Defs.' Reply Mem. at 8. Norgrove's due process claim is moot insofar as he seeks reinstatement and back pay, both of which he received through his Article 78 proceeding. *See Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (holding that a case is moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"). Moreover, being placed in a reassignment center with full salary does not implicate a property interest, *see O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties."). Thus, Norgrove's due process claim fails.

V

Defendants argue that Norgrove's state- and city-law claims must be dismissed because he failed to file a notice of claim naming the individual defendants and setting forth the discriminatory conduct. Be that as it may, Norgrove's discrimination

claim under the NYSHRL and the NYCHRL is analyzed under the same standard as his claim under federal law, and therefore fails on the merits. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). Where, as here, state and federal law claims are governed by the same standards, judicial economy is best served by exercising supplemental jurisdiction. *See Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest."). Accordingly, the Court exercises supplemental jurisdiction over Norgrove's state- and city-law claims, and grants summary judgment for the same reasons set forth above.

## CONCLUSION

Defendants' motion is granted in its entirety.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 4, 2011